CHARLES F. KESTER (CA Bar No. 157763)
DELANEY KESTER LLP
4505 Las Virgenes Road, Suite 203
Calabasas, California 91302
Tel.:  (818) 974-8627 ● Fax:  (818) 914-6911
*charles@delaneykester.com*

ROYSTON H. DELANEY (*Of Counsel*)
ILYAS J. RONA (*Of Counsel*)
DELANEY KESTER LLP
50 Congress Street, #600
Boston, Massachusetts 02109
Tel.:  (857) 498-0384
*royston@delaneykester.com*
*ilyas@delaneykester.com*

Attorneys for Plaintiff Tricia Mullins

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRICIA MULLINS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>HORIZON PHARMA USA, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.  **'18 CV 0399 BAS NLS**<br><br>Nature of Action – *Whistleblower Retaliation Claims*<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.  Retaliation in Violation of 31 U.S.C. § 3730(h)<br>2.  Retaliation in Violation of Cal. Gov't Code § 12653<br>3.  Wrongful Termination in Violation of Public Policy<br>4.  Intentional Infliction of Emotional Distress<br><br>*DEMAND FOR JURY TRIAL* |

**INTRODUCTION**

1.      This is an action by Plaintiff Tricia Mullins ("Plaintiff") against her former employer, Defendant Horizon Pharma USA, Inc. ("Horizon Pharma" or "the Company").  As alleged in greater detail below, Plaintiff asserts that Horizon Pharma retaliated against her in violation of both federal law (31 U.S.C. § 3730(h)) and California law (Cal. Gov't Code § 12653, and wrongful termination in violation of public policy) when the Company learned that she was a *bona fide* whistleblower that successfully had brought claims against a prior employer pursuant to the federal False Claims Act, 31 U.S.C. § 3729, *et seq.*, and various state-law false claims acts.

**PARTIES**

2.      Plaintiff Tricia Mullins ("Plaintiff") is a citizen of the United States who resides in Encinitas, California; and who has resided there at all times relevant to the claims in this action.  Plaintiff has worked in pharmaceutical/biotech sales and patient advocacy for over twenty years, with significant experience in the rare disease space. Plaintiff was employed by Horizon Pharma in the position of Senior Director, Global Patient Advocacy from June 1, 2017, until she unlawfully was terminated by the Company effective December 8, 2017.

3.      Defendant Horizon Pharma USA, Inc. ("Horizon Pharma" or "the Company") is a Delaware corporation with its principal place of business in Lake Forest, Illinois.  Horizon Pharma is a wholly-owned subsidiary of Horizon Pharma Public Limited Company ("Horizon Pharma plc"), and it is the American operating

- 2 -

subsidiary of the parent company, which is a public limited company organized under the laws of the country of Ireland, with its headquarters in Dublin, Ireland; and with offices in multiple countries, including the United States (California and Illinois). According to its website, Horizon Pharma plc is "a global biopharmaceutical company with more than $1 billion in net sales and over 1000 employees" that develops, acquires, and markets various medicines "through [its] rare disease, rheumatology and primary care units." Horizon Pharma plc is publicly-traded on the NASDAQ stock exchange (ticker: HZNP) with a market capitalization of approximately $2.3 billion as of February 20, 2018.

4.     Upon information and belief, Defendant DOES 1 through 10, inclusive, participated in some or all of the unlawful conduct alleged herein; or aided and abetted Defendants in the commission of some or all of their wrongful acts, or omissions to act, that are alleged herein; or otherwise are responsible for Plaintiff's damages that are alleged herein. Plaintiff is ignorant of the true names and capacities of Defendant Does 1 through 10, inclusive, and therefore sues them by these fictitious names. Plaintiff will amend this Complaint to allege their true names when she discovers this information.

5.     Unless otherwise stated herein, each Defendant was the agent, joint venturer, and/or employee of each of the remaining Defendants, and in doing the things alleged herein, each Defendant was acting within the course and scope of said

agency, joint venture, and/or employment with the advance knowledge, acquiescence, or subsequent ratification of each and every remaining Defendant.

## JURISDICTION AND VENUE

6.     This Court has subject-matter jurisdiction over Plaintiff's federal claim (Count I, *infra*) pursuant to 31 U.S.C. § 3730(h)(2) and 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's related state-law claims (Counts II, III, & IV, *infra*) pursuant to 28 U.S.C. § 1367.  In addition, and based on the diversity of citizenship of the parties and the amount in controversy (greater than $75,000), this Court has jurisdiction over all claims in this action pursuant to 28 U.S.C. § 1332.

7.     At all times relevant to this Complaint, Horizon Pharma regularly conducted substantial business within the State of California and within the jurisdiction of this Court.  During the time that Horizon Pharma employed (and later terminated) Plaintiff – and at Horizon Pharma's express direction – she was based out of her home office in Encinitas, California, which is within this Court's jurisdiction.  Based on the foregoing, Horizon Pharma is subject to personal jurisdiction in this Court.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

### A.    Plaintiff's Whistleblower Experience

9.     Several years prior to working for Horizon Pharma, Plaintiff was employed by Aegerion Pharmaceuticals, Inc. ("Aegerion") from September 2012 to

April 2014.  During her employment at Aegerion, Plaintiff was involved in the pre-launch and launch of an orphan disease medication called Juxtapid that was approved by the FDA to treat an ultra-rare genetic condition called Homozygous Familial Hypercholesterolemia ("HoFH") that afflicts only one in a million people.

10.    While working for Aegerion, Plaintiff became aware, and was concerned, that Aegerion was unlawfully marketing Juxtapid beyond the FDA-approved label for the drug – so-called "off-label marketing."  In particular, Plaintiff learned that Aegerion was marketing Juxtapid outside of the narrow HoFH patient population by promoting the drug for off-label, non-FDA-approved, and potentially-dangerous medical uses.  Put simply, Aegerion sought to market the drug to a larger (but not FDA-approved) patient population in order to vastly increase drug sales and the resulting profits.

11.    Because Medicare and Medicaid were significant purchasers of Juxtapid, the off-label marketing by Aegerion resulted in numerous unlawful submissions to the federal and state governments for payment – *i.e.*, false claims.

12.    On July 26, 2013, Plaintiff (and two others) filed a whistleblower action against Aegerion pursuant to the *qui tam* provisions of the federal False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, and various state-law false claims acts.  The case was filed in the United States District Court for the District of Massachusetts, and it was captioned *United States, et al., ex rel. Clarke, Mullins, and Szudlo v. Aegerion Pharmaceuticals, Inc.*, Civil Action No. 13-cv-11785 (the "Aegerion FCA Case").

13.     Over the next several years, the government investigated the allegations set forth in the Aegerion FCA Case, including the central allegation that Aegerion unlawfully had been marketing Juxtapid "off label" for the treatment of non-HoFH patients.  Ultimately, the government determined that the allegations had merit; and Aegerion admitted that it had done wrong.

14.     On September 22, 2017, the United States Department of Justice issued a press release confirming (1) that Aegerion had agreed to plead guilty to certain criminal charges, and (2) that Aegerion had agreed to pay $28.8 million as part of a civil settlement that resolved, *inter alia*, the claims asserted in the Aegerion FCA Case. Plaintiff and the other two whistleblowers expressly were identified by name in the DOJ press release.

**B.      Horizon Pharma Learns That Plaintiff Was an FCA Whistleblower**

15.     That same day, September 22, 2017, one of Plaintiff's counsel in the Aegerion FCA Case – *i.e.*, Royston H. Delaney of Delaney Kester LLP – sent a letter to Horizon Pharma advising the Company about Plaintiff's involvement in the Aegerion FCA Case, and attaching a copy of the DOJ's press release.  The letter was sent via email and Federal Express overnight service to Irina Konstantinovsky, the Chief Human Resources Officer of Horizon Pharma.

16.     In his letter, Mr. Delaney explained that Plaintiff had "today [been] publicly recognized as a good-faith whistleblower under the Federal False Claims Act."  He also expressed his "hope that you are impressed and proud of [Plaintiff's]

- 6 -

contribution to the ongoing fight against fraud on government health care programs and on behalf of the health and welfare of patients across the United States."

17.    Next, Mr. Delaney expressly (and correctly) cautioned Horizon Pharma that "it is unlawful to retaliate against a whistleblower for taking steps to prevent waste[,] fraud and abuse under FCA, 31 U.S.C. § 3730(h)."  He further explained: "The prohibition against such retaliation extends to anyone or any entity – for example, it is not just the employer who cannot retaliate against a whistleblower; indeed, ***any subsequent employers also are barred from adverse employment actions***."  (Emphasis added.)

18.    Mr. Delaney noted that:  "Some unscrupulous employers seek to rid themselves of employees who prove to be uncompromisingly honest, public servants." He then optimistically stated:  "We hope and expect Horizon Pharma is no such employer and would instead value [Plaintiff's] contribution on behalf of patients." Unfortunately, Mr. Delaney's optimism was dashed by Horizon Pharma soon thereafter.

**C.    Horizon Pharma Retaliates Against Plaintiff**

19.    Less than three months later, on December 8, 2017, Horizon Pharma unlawfully terminated Plaintiff in retaliation for her having been an FCA whistle-blower in the Aegerion FCA Case.  The retaliatory nature of the termination is established by the following facts:

20.     First, prior to her termination, Plaintiff had performed her job well and she repeatedly had received positive feedback from her immediate supervisors about her job performance.

21.     Second, Horizon Pharma learned on September 22, 2017, that Plaintiff had been an FCA whistleblower in the Aegerion FCA Case.

22.     Third, Horizon Pharma subsequently terminated Plaintiff ten weeks later based on the pretextual and false assertion that she allegedly had committed "misconduct."  In particular, Horizon Pharma falsely claimed that Plaintiff had violated her confidentiality agreement with the Company.

23.     In support of its confidentiality-breach allegation, Horizon Pharma purported to rely on statements by its Chief Compliance Officer, Timothy Ayers, who claimed to have overheard Plaintiff disclosing confidential information to her fiancé, Marc Riedl, M.D., while the three of them (Mr. Ayers, Plaintiff, and Dr. Riedl) were waiting to board an airplane from San Diego to Chicago just two days before on December 6, 2017.

24.     In fact, Plaintiff ***did not disclose any confidential information*** of the Company to Dr. Riedl.  Plaintiff merely (and briefly) mentioned some publicly-available information about the Company – and such information is not confidential information subject to Plaintiff's confidentiality agreement with the Company.

25.     It also is telling that when Plaintiff was told about her termination, Mr. Ayers presided over the meeting and personally informed Plaintiff that she was being

fired effective immediately; but he failed/refused to identify the statements made by Plaintiff at the San Diego airport that allegedly had included confidential information about the Company.

26.    The pretextual and retaliatory basis for Plaintiff's termination also is supported by the failure of Horizon Pharma to conduct any meaningful or thorough review of the underlying facts giving rise to Plaintiff's alleged breach of the confidentiality agreement.  Instead, the Company peremptorily fired Plaintiff less than 48 hours after her alleged misconduct.  No warnings.  No probation.  No suspension. No investigation.  No asking an available witness (Dr. Riedl) what he remembered having been said at the San Diego airport.  The fix was in.

## COUNT I

*Retaliation in Violation of the Federal False Claims Act,*
*31 U.S.C. § 3730(h) – Against All Defendants*

27.    Plaintiff hereby realleges and incorporates the allegations of paragraphs 1 through 26 above, inclusive, as though set forth fully herein.

28.    As set forth in detail above, Horizon Pharma threatened, harassed, discriminated against, and terminated Plaintiff because of her lawful acts in successfully exposing violations of the federal False Claims Act by her prior employer, Aegerion.  Any other ground for dismissing or disciplining Plaintiff was pretextual. By these actions, Horizon Pharma violated the False Claims Act, 31 U.S.C. § 3730(h).

- 9 -

29.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has been damaged in amounts to be proven at trial, but in any event, in excess of $75,000.  Plaintiff's damages include, but are not limited to, economic harm – *i.e.*, back pay and lost bonuses (both doubled per statute), front pay, lost health insurance benefits, lost stock options, reputational injury – and emotional distress.  Plaintiff also is entitled to recover prejudgment legal interest on her damages; and litigation costs and reasonable attorneys' fees.

## COUNT II

*Retaliation in Violation of the California False Claims Act,*
*Cal. Gov't Code § 12653 – Against All Defendants*

30.     Plaintiff hereby realleges and incorporates the allegations of paragraphs 1 through 29 above, inclusive, as though set forth fully herein.

31.     As set forth in detail above, Horizon Pharma threatened, harassed, discriminated against, and terminated Plaintiff because of her lawful acts in successfully exposing violations of the California False Claims Act by her prior employer, Aegerion.  Any other ground for dismissing or disciplining Plaintiff was pretextual.  By these actions, Horizon Pharma violated the California False Claims Act, Cal. Gov't Code § 12653.

32.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has been damaged in amounts to be proven at trial, but in any event, in excess of $75,000.  Plaintiff's damages include, but are not limited to, economic harm – *i.e.*,

COMPLAINT FOR DAMAGES

back pay and lost bonuses (both doubled per statute), front pay, lost health insurance benefits, lost stock options, reputational injury – and emotional distress.  Plaintiff also is entitled to recover prejudgment legal interest on her damages; exemplary and punitive damages; and litigation costs and reasonable attorneys' fees.

33.     Defendants' conduct as alleged herein was done knowingly, maliciously, oppressively, and with conscious disregard for the rights of Plaintiff.  Therefore, Plaintiff is entitled pursuant to Section 3294 of the California Civil Code to recover exemplary and punitive damages against Defendants in an amount to be determined at trial.

## COUNT III

*Wrongful Termination in Violation of Public Policy*
*Under California Law – Against All Defendants*

34.     Plaintiff hereby realleges and incorporates the allegations of paragraphs 1 through 33 above, inclusive, as though set forth fully herein.

35.     As set forth in detail above, Horizon Pharma terminated Plaintiff because of her lawful acts in successfully exposing violations of the federal False Claims Act and various state false claims acts (including the California False Claims Act) by her prior employer, Aegerion.  Any other ground for dismissing or disciplining Plaintiff was pretextual.  By these actions, Horizon Pharma terminated Plaintiff in violation of public policy under California law.

36.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has been damaged in amounts to be proven at trial, but in any event, in excess

- 11 -

of $75,000.  Plaintiff's damages include, but are not limited to, economic harm – *i.e.*, back pay and lost bonuses, front pay, lost health insurance benefits, lost stock options, reputational injury – and emotional distress.  Plaintiff also is entitled to recover prejudgment legal interest on her damages; and litigation costs and reasonable attorneys' fees.

37.     Defendants' conduct as alleged herein was done knowingly, maliciously, oppressively, and with conscious disregard for the rights of Plaintiff.  Therefore, Plaintiff is entitled pursuant to Section 3294 of the California Civil Code to recover exemplary and punitive damages against Defendants in an amount to be determined at trial.

## COUNT IV

*Intentional Infliction of Emotional Distress*
*Under California Law – Against All Defendants*

38.     Plaintiff hereby realleges and incorporates the allegations of paragraphs 1 through 37 above, inclusive, as though set forth fully herein.

39.     Defendants' conduct as alleged herein was extreme and outrageous, and was engaged in with the intention of causing, or in reckless disregard of the probability of causing, severe emotional distress to Plaintiff.

40.     As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered damages in the form of severe emotional distress, humiliation, mental anguish, and trauma, in an amount to be established at trial.

COMPLAINT FOR DAMAGES

The total damage amount exceeds $75,000.  Plaintiff also is entitled to recover prejudgment legal interest on her damages; and litigation costs.

41.     Defendants' conduct as alleged herein was done knowingly, maliciously, oppressively, and with conscious disregard for the rights of Plaintiff.  Therefore, Plaintiff is entitled pursuant to Section 3294 of the California Civil Code to recover exemplary and punitive damages against Defendants in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Tricia Mullins prays that the Court enter Judgment against Defendants as follows:

1.     With respect to <u>Count I</u> for Retaliation in Violation of 31 U.S.C.
§ 3730(h), Plaintiff prays for judgment against Defendants awarding her all available damages and relief including, without limitation:  back pay and lost bonuses (both doubled per statute); front pay; lost health insurance benefits; lost stock options; reputational injury damages; emotional distress damages; compensation for all special damages she has sustained as a result of Defendants' retaliation; prejudgment legal interest on all of the foregoing amounts; and her costs of suit and reasonable attorneys' fees for prosecuting this claim;

2.     With respect to <u>Count II</u> for Retaliation in Violation of Cal. Gov't Code § 12653, Plaintiff prays for judgment against Defendants awarding her all

- 13 -

available damages and relief including, without limitation:  back pay and lost bonuses (both doubled per statute); front pay; lost health insurance benefits; lost stock options; reputational injury damages; emotional distress damages; compensation for all special damages she has sustained as a result of Defendants' retaliation; prejudgment legal interest on all of the foregoing amounts; exemplary and punitive damages; and her costs of suit and reasonable attorneys' fees for prosecuting this claim;

3.     With respect to <u>Count III</u> for Wrongful Termination in Violation of Public Policy Under California Law, Plaintiff prays for judgment against Defendants awarding her all available damages and relief including, without limitation:  back pay and lost bonuses; front pay; lost health insurance benefits; lost stock options; reputational injury damages; emotional distress damages; compensation for all special damages she has sustained as a result of Defendants' unlawful termination; prejudgment legal interest on all of the foregoing amounts; exemplary and punitive damages; and her costs of suit and reasonable attorneys' fees for prosecuting this claim;

4.     With respect to <u>Count IV</u> for Intentional Infliction of Emotional Distress Under California Law, Plaintiff prays for judgment against Defendants awarding her all available damages and relief including, without

- 14 -

limitation:  emotional distress damages; medical expenses; prejudgment legal interest on all of the foregoing amounts; exemplary and punitive damages; and her costs of suit for prosecuting this claim; and

5.    In addition to the foregoing, Plaintiff prays for judgment against Defendants awarding her any and all other damages or relief that the Court deems just and proper.

DATED:  February 21, 2018

DELANEY KESTER LLP
CHARLES F. KESTER
ROYSTON H. DELANEY
ILYAS J. RONA


By:_____/s/Charles F. Kester_____
            Charles F. Kester

Attorneys for Plaintiff Tricia Mullins
*charles@delaneykester.com*


## **DEMAND FOR JURY TRIAL**

Plaintiff Tricia Mullins demands a jury trial of all issues in this action.

DATED:  February 21, 2018

DELANEY KESTER LLP
CHARLES F. KESTER
ROYSTON H. DELANEY
ILYAS J. RONA


By:_____/s/Charles F. Kester_____
            Charles F. Kester

Attorneys for Plaintiff Tricia Mullins
*charles@delaneykester.com*